**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61368-STRAUSS**

**COLEY QUINN,**

Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

Defendant.

_________________________________/

**ORDER OF REMAND**

In this action, Plaintiff seeks judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") that Plaintiff's Medicare Advantage Plan (the "Plan") "is not required to grant [Plaintiff's] prior authorization request for physician services from an out-of-network provider" (Florida Spine Specialists, LLC). [DE 18-1] at 7; *see also id.* at 36-43 (ALJ decision). As part of that decision, the Secretary declined to consider the merits of Plaintiff's request for reimbursement of more than $8,000 that Plaintiff incurred in out-of-pocket expenses between 2022 and 2024 for office visits with a different out-of-network provider (Boca Pain Management). According to the Secretary's final decision, Plaintiff's request for reimbursement was "outside of the ALJ's jurisdiction" and beyond the authority of the Medicare Appeals Council ("MAC") "to address or to provide a remedy." [DE 18-1] at 6; *see also id.* at 40-43.

The parties previously filed and briefed cross-motions for summary judgment [DE 35, 38, 40, 43]. Upon reviewing the parties' briefing, the Court questioned whether it had subject matter jurisdiction. Although the Secretary did not raise the potential absence of subject matter jurisdiction in his briefing, subject matter jurisdiction "cannot be waived or otherwise conferred

upon the court by the parties." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citation omitted). The Court "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citations omitted). "Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021) ("If subject-matter jurisdiction does not exist, dismissal must be without prejudice." (citation omitted)).

Given the Court's concerns regarding the potential lack of subject matter jurisdiction, the Court denied the parties' cross-motions for summary judgment without prejudice and scheduled a hearing for August 28, 2026 to address the issue of jurisdiction [DE 47]. Both Plaintiff and counsel for Defendant appeared at the hearing. *See* [DE 51]. At the hearing, the Court first addressed the issue of jurisdiction with the parties and then discussed one of the merits issues with the parties. At the conclusion of the hearing, the Court inquired whether the Secretary wished to consider a voluntary remand based upon the matters discussed at the hearing. The Secretary has since declined to agree to a voluntary remand [DE 55]. As such, the Court will first address the issue of subject matter jurisdiction. Finding that jurisdiction exists, the Court will proceed to address the merits based upon the summary judgment briefing that the parties previously filed, and taking into account the parties' arguments at the August 28, 2026 hearing.

## LEGAL STANDARD

"As made applicable to Medicare Part C by title 42, section 1395w-22(g)(5), title 42, section 405(g) provides for judicial review of final decisions of the Secretary of Health and Human Services regarding the availability of Medicare Part C benefits and the amounts, if any, due in benefits reimbursement." *Hosp. Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc.*, 149 F.4th 82, 87 (1st Cir. 2025) (cleaned up). "Pursuant to 42 U.S.C. § 405(g), judicial review of the Secretary's decision regarding a claim for Medicare benefits is limited to whether there is substantial evidence to support the findings of the Secretary, and whether the correct legal standards were applied." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (cleaned up); *see also Waters v. Becerra*, 80 F.4th 782, 787 (6th Cir. 2023) ("The Medicare Act limits judicial review to determining whether the Secretary's decision was supported by substantial evidence and whether the Secretary applied the correct legal standards." (citations omitted)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1280 (11th Cir. 2010) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

## SUBJECT MATTER JURISDICTION

"[T]he Medicare statute 'strips federal courts of primary federal-question subject matter jurisdiction' over claims that arise under the Medicare Act." *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1046 (11th Cir. 2008) (quoting *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779 (11th Cir. 2002)). "In place of that primary federal-question jurisdiction, the Act provides for an administrative hearing before the Secretary of the Department of Health and Human Services." *Id.* at 1047 (citing 42 U.S.C. § 1395w-22(g)(5)). Following the administrative appeals

process, an enrollee may seek judicial review of the Secretary's final decision. 42 U.S.C. § 1395w-22(g)(5). However, judicial review (for calendar year 2025 when this case was filed) is only available if the amount in controversy is at least $1,900. *See* 42 U.S.C. § 1395w-22(g)(5); 42 U.S.C. § 1395ff(b)(1)(E); Medicare Program; Medicare Appeals; Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2025, 89 Fed. Reg. 79294-03 (Sept. 27, 2024); *see also Shung v. Sec'y of Health & Hum. Servs.*, No. 26-10201, 2026 WL 2349957, at *1 (11th Cir. Aug. 13, 2026).

Whether the amount-in-controversy requirement is satisfied here – and, consequently, whether this Court has jurisdiction – turns on whether the Court can take into account Plaintiff's request for reimbursement in determining the amount in controversy. If the Court can consider Plaintiff's request for reimbursement in determining the amount in controversy, the jurisdictional threshold of $1,900 is clearly satisfied. After all, at the time Plaintiff requested a hearing before an ALJ, Plaintiff was seeking reimbursement of at least $8,610.[1] *See* [DE 18-1] at 40, 56. But if the Court cannot consider Plaintiff's request for reimbursement, the amount in controversy would not be met. That is because the amount in controversy would only be based on Plaintiff's request for a consultation with Florida Spine Specialists, LLC. As noted above, the Secretary's final decision was that the "Plan is not required to grant [Plaintiff's] prior authorization request for physician services from an out-of-network provider" (Florida Spine Specialists). [DE 18-1] at 7. Notably, at the August 28, 2026 hearing, Plaintiff did not contend that the amount of that one visit would be $1,900 or more, and Plaintiff acknowledged that he did not move forward with the consultation (and, thus, did not pay anything for a consultation with Florida Spine Specialists).

[1] Even if the Court cannot consider additional out-of-pocket expenses Plaintiff has incurred since his ALJ hearing (in determining the amount in controversy), the amount of Plaintiff's request for reimbursement at the time Plaintiff requested an ALJ hearing substantially exceeded $1,900.

Before the August 28, 2026 hearing, the Court was concerned that it could not take into account Plaintiff's request for reimbursement in determining the amount in controversy. That is because Plaintiff is seeking judicial review of the Secretary's final decision, and the Secretary's final decision was limited to addressing the merits of the Florida Spine Specialists prior authorization issue. Again, the Secretary found Plaintiff's request for reimbursement to be outside of his jurisdiction. *See* [DE 18-1] at 6 ("[T]he Council agrees with the ALJ's determination that these issues fall outside the ALJ's jurisdiction and are likewise beyond the Council's authority to address or to provide a remedy.").

However, in light of the discussion that occurred at the August 28, 2026 hearing before this Court, and based upon the Court's further review of the administrative record, the Court finds that Plaintiff has claimed in good faith that his request for reimbursement is part of the amount in controversy, and consequently, that the amount in controversy exceeds $1,900. *Cf. Kodenkandeth v. UPMC Health Plan, Inc.*, No. 25-1513, 2026 WL 1533301, at *1 (3d Cir. June 1, 2026) ("Kodenkandeth did not sufficiently claim in good faith that the coverage decisions involved an amount in controversy of at least $1,850, either individually or in the aggregate." (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938))).

By way of background, the administrative record reflects that Plaintiff submitted to the Plan a request for reimbursement of out-of-pocket expenses Plaintiff incurred for office visits with Dr. Girard of Boca Pain Management. *See, e.g.*, [DE 18-1] at 79-96. The Plan issued a Notice dated September 14, 2023, denying Plaintiff's request for reimbursement. [DE 18-1] at 103. The Notice stated that Plaintiff had 60 days to request an appeal but that the Plan could give Plaintiff more time if he had a good reason for missing the deadline. *Id.* There is no indication in the record that Plaintiff appealed within 60 days.

On June 7, 2024, the Plan denied Plaintiff's request for an evaluation with Dr. Sudhir Rao (the Florida Spine Specialists prior authorization request). [DE 18-1] at 99. On July 1, 2024, the Plan denied reconsideration. [DE 18-1] at 101. The matter was then forwarded to Maximus Federal Services, Inc. ("Maximus"), an independent reviewer. *See id.* (noting that Medicare requires the Plan to send the matter to Maximus to conduct an independent review). Maximus upheld the Plan's denial. [DE 18-1] at 146.

At the August 28, 2026 hearing before this Court, Plaintiff maintained that what he sought to appeal (back in June 2024) was the Plan's denial of his request for reimbursement. Plaintiff explained that it was his request for reimbursement that was important to him, and not specifically the Plan's decision to deny prior authorization for a visit with Florida Spine Specialists (a visit Plaintiff did not attend or pay anything for). Plaintiff's explanation made a lot of sense. He was primarily concerned about the thousands of dollars he has incurred in out-of-pocket expenses for his appointments with Dr. Girard (Boca Pain Management). So Plaintiff did not understand why Maximus's independent review – and the subsequent review by the ALJ and MAC – was confined to the Florida Spine Specialists prior authorization issue.

Although there may be gaps in the record (something the Secretary may need to evaluate on remand), it appears that Plaintiff made his initial appeal request to the Plan by phone on June 12, 2024. *See* [DE 18-1] at 158. While Plaintiff says what he sought to appeal was the reimbursement issue, the Plan indicated that Plaintiff only sought to appeal the Florida Spine Specialists prior authorization issue. *See id.* It is Plaintiff's June 12, 2024 phone call to the Plan that apparently framed the issue for appeal to the Plan (the appeal denied on July 1, 2024), that framed the issue that the Plan forwarded to Maximus for independent review, and that framed the issue for the Secretary's review (via the ALJ and MAC). *See id.* However, no transcript of the

June 12, 2024 phone call is included in the record, so the Court is unable to determine whether Plaintiff did in fact seek to appeal the reimbursement issue on that phone call. Now, the reason this all matters is because the ALJ and MAC refused to review the merits of Plaintiff's request for reimbursement on the basis that it was outside the scope of the appeal. And the scope of the appeal was apparently framed by Plaintiff's June 12, 2024 phone call with the Plan. If Plaintiff did request an appeal of the Plan's denial of his request for reimbursement, then that would have seemingly been part of the scope of his appeal, and consequently, would factor into the amount in controversy.

Thus, based on the record before this Court, and based on the discussion that occurred at the August 28, 2026 hearing, the Court finds that Plaintiff has claimed in good faith that the amount in controversy exceeds $1,900 because he sought to appeal the Plan's denial of his request for reimbursement from the outset.[2] At the very least, there is nothing in the record to refute Plaintiff's contention that he requested an appeal of the reimbursement issue when he called the Plan to pursue an appeal. Moreover, Plaintiff's assertion that he requested an appeal of the reimbursement issue is consistent with what Plaintiff maintained throughout the administrative proceedings. When Plaintiff requested an ALJ hearing on August 19, 2024, he made clear that he was seeking review of the reimbursement issue. *See* [DE 18-1] at 52-57. And not only did Plaintiff seek to present the reimbursement issue to the ALJ, he also sought to present the reimbursement issue to the MAC. *See* [DE 18-1] at 9-12. In other words, Plaintiff consistently sought review of the

[2] Although Plaintiff's June 12, 2024 call with the Plan was more than 60 days after the Plan initially denied Plaintiff's request for reimbursement, that fact alone does not foreclose Plaintiff's ability to pursue an appeal. As noted above, Plaintiff may have been permitted to appeal the Plan's denial of his request for reimbursement beyond 60 days if he had a good reason for missing the deadline. The Court makes no ultimate decision on the issue because it is beyond the limited scope of this Court's review. All that the Court determines is that Plaintiff has claimed in good faith that the amount of his request for reimbursement is part of the amount in controversy for purposes of this action.

reimbursement issue but was shut down. Whether he was shut down properly or improperly, however, is not something that the Court can determine based on the current record. All that the Court can determine is that Plaintiff has claimed in good faith that the amount-in-controversy requirement is satisfied.

For the foregoing reasons, the Court concludes that the Secretary likely should have considered the merits of Plaintiff's request for reimbursement (or at least looked into why the issue was not included within the appeal when Plaintiff vehemently maintained that he requested an appeal of the reimbursement issue). As such, Plaintiff's request for reimbursement of more than $8,000 is part of the amount in controversy, and this Court has subject matter jurisdiction.

**MERITS**

The merits of this action turn on whether Plaintiff satisfied an exception to the general rule that an enrollee must receive care from an in-network provider. Specifically, to obtain coverage for care provided by an out-of-network provider, Plaintiff must satisfy one of three exceptions. *See* [DE 18-1] at 205. Two of those exceptions are at issue here. First, the Plan "covers emergency care or urgently needed services that you get from an out-of-network provider." *Id.* Second, if an enrollee "need[s] medical care that Medicare requires [the] [P]lan to cover but there are no specialists in [the Plan's] network that provide this care," the Plan will cover such care from an out-of-network provider. *Id.* The Secretary determined that Plaintiff did not satisfy either of the foregoing exceptions. *See id.* at 3-7. However, the Secretary's determination regarding the second exception is not supported by substantial evidence.[3] To be clear, that does not mean that Plaintiff

[3] Because Plaintiff only needs to satisfy one exception to obtain coverage, the Court does not address Plaintiff's contention that he also satisfies the exception for urgently needed services.

satisfies the second exception. Rather, further administrative proceedings are necessary to determine whether or not Plaintiff satisfies an exception.

Regarding the second exception, the Secretary determined Plaintiff did not satisfy the exception because "an in-network provider is available to provide the services required to treat [Plaintiff's] condition." [DE 18-1] at 5. As noted above, to satisfy the second exception, Plaintiff must "need medical care that Medicare requires [the] [P]lan to cover but there are no specialists in [the Plan's] network that provide this care." *Id.* at 205. In other words, the Plan must "[a]rrange for and cover any medically necessary covered benefit outside of the plan provider network, but at in-network cost sharing, when an in-network provider or benefit is unavailable or inadequate to meet an enrollee's medical needs." 42 C.F.R. § 422.112(a)(1)(iii).

This gist of Plaintiff's argument is that he requires treatment with a pain management provider who provides oral pain medication management, but the Plan has failed to show that such providers are available in network. Plaintiff has explained that other treatments like injections have been ineffective and pose health risks to him. The ALJ's decision acknowledged Plaintiff's testimony and arguments to that effect. *See* [DE 18-1] at 40-41. Regarding the availability of in-network providers who provide oral pain medication management, the Plan has provided various lists of pain management providers to Plaintiff. However, as the ALJ noted in her decision, Plaintiff testified that one of the providers never returned Plaintiff's messages, and the other providers did not provide the treatment Plaintiff needed; instead, they provided other types of treatment like injections. *See id.* at 41.

As of the time the hearing before the ALJ concluded, there was insufficient evidence in the record to allow a reasonable person to conclude that: (1) Plaintiff did not require oral pain medication management; or (2) there were in-network providers who were both available and

could provide oral pain medication management treatment to Plaintiff. The transcript of the hearing before the ALJ shows why that is so. At the hearing, the Plan's representative indicated she was just "learning now" (i.e., at the time of the hearing) that Plaintiff needed treatment with oral medication. [DE 18-2] at 452-53. The ALJ likewise seemed to accept that Plaintiff "*needs* a pain management specialist, but specifically one that does oral medications, not injections." *Id.* at 453-54. Notably, the Plan's representative did not refute Plaintiff's testimony that the available providers on the lists that the Plan previously provided to Plaintiff did not provide the oral pain medication management treatment Plaintiff required. Specifically, the Plan's representative stated:

> It looks like this is basically what happened here. A person that was working the appeal that didn't realize that these providers only provide injections, which, you know, it's something that we were not aware of. . . . But in this case, it looks like we did, you know, refer him -- provide alternatives to doctors that, unfortunately, they were not able to assist him with his needs, which is obviously oral medications.

[DE 18-2] at 454-55.

Thus, based on the discussion at the ALJ hearing, the only reasonable conclusions (at that time) were that Plaintiff required treatment with oral pain medication, and the Plan had not identified any available in-network providers who could provide the treatment Plaintiff needed. Apparently recognizing these issues, the ALJ held the record open and gave the Plan a few days to identify available in-network providers who could treat Plaintiff with oral pain medication management. *See* [DE 18-2] at 8-11; [DE 18-1] at 36-37, 42. And a few days after the hearing (during the period in which the ALJ held the record open), the Plan submitted correspondence stating that it "was informed by the following 4 providers that they do extend oral and interventional pain management treatments for [Plaintiff's] condition." [DE 18-2] at 10. The

correspondence listed the four providers and noted that Plaintiff scheduled an appointment with one of the four providers, Dr. Christian Gonzalez. *Id.*

On October 2, 2024, five days after receiving the Plan's correspondence, the ALJ issued her unfavorable decision. In finding against Plaintiff, the ALJ seemed to base her decision on the Plan's post-hearing correspondence identifying Dr. Gonzalez and three other providers as providers who could provide oral pain management treatment.[4] *See* [DE 18-1] at 42-43 ("As of September 30, 2024, the MA Plan located an in-network pain specialist who provides both oral and other interventional pain management and the Enrollee agreed to schedule an appointment with that specialist on October 21, 2024. . . . The MA Plan has referred the Enrollee to an in-network pain specialist and there is no evidence indicating that this specialist is inadequate to meet the Enrollee's medical needs.").

Plaintiff subsequently requested review of the ALJ's decision. *See* [DE 18-1] at 9-12. In his request for review, Plaintiff stated, *inter alia*, that he attended his scheduled October 21, 2024 appointment with Dr. Gonzalez and that Dr. Gonzalez stated he does not provide the service Plaintiff needs. *Id.* at 10.

On May 6, 2025, the MAC issued a decision (i.e., the Secretary's final decision) adopting the ALJ's decision. *Id.* at 3-7. The MAC agreed with the ALJ that Plaintiff "does not meet the exceptions required for pre-approval of physician services from an out-of-network provider." *Id.* at 5. The MAC seemed to find that Plaintiff did not meet the exception under 42 C.F.R. § 422.112(a)(1)(iii) for two separate reasons: (1) Plaintiff did not establish a medical need for treatment with oral pain medication only (as opposed to injections or other types of treatment);

---

[4] Aside from the Plan's post-hearing submission identifying the four providers (including Dr. Gonzalez), nothing had changed since the conclusion of the hearing.

and (2) the Plan provided evidence that it has available pain management providers in network, including providers who treat patients with oral pain medication. *See* [DE 18-1] at 5-6.

As an initial matter, to the extent the MAC made the foregoing determination regarding medical need, that determination is not supported by substantial evidence. As discussed above, the Plan even seemed to concede the issue of medical need at the hearing before the ALJ.

Regarding the second reason the MAC seemed to provide – that there were available in-network providers who provide oral pain medication management treatment – that determination is not supported by substantial evidence either. As discussed above, at the time the ALJ hearing concluded, no reasonable mind could have determined, based on the evidence in the record, that the Plan had available in-network pain management providers who specifically provide oral pain medication management treatment. Again, the Plan's representative essentially acknowledged at the ALJ hearing that the Plan was not previously aware of Plaintiff's need for oral pain medication, such that the pain management providers the Plan had identified for Plaintiff prior to the date of the ALJ hearing were pain management providers generally. In other words, the Plan could not state whether any of the providers identified prior to the ALJ hearing provided treatment with oral pain medication specifically because, as the Plan representative stated, the Plan was not previously aware of Plaintiff's need for such a provider.

Following the hearing, one thing changed. The Plan provided the list of providers (including Dr. Gonzalez) that it asserted could provide the treatment Plaintiff needed – treatment with oral pain medication. The correspondence listing those providers, [DE 18-2] at 10, is the sole evidence supporting the determination that the Plan has available in-network providers who provide the pain management treatment Plaintiff needs. However, the Plan's post-hearing submission (the sole evidence supporting the Secretary's final decision) is no more than a mere

scintilla. And Plaintiff's assertion that his appointment with Dr. Gonzalez revealed that Dr. Gonzalez does not in fact provide the treatment Plaintiff needs only increases any concerns regarding the fact that the Plan's post-hearing submission is the only evidence supporting the Secretary's final decision. While Plaintiff's assertion regarding Dr. Gonzalez was not made under oath at a hearing, the problem with the Secretary's reliance on the Plan's post-hearing submission is that Plaintiff never had an opportunity to address the submission at any hearing. And the ALJ relied on the submission as the sole evidence to support her decision without ever holding a hearing to further address the matter.

Assume for a moment that the Plan's post-hearing submission identifying Dr. Gonzalez and other providers (as doctors who specifically provide the treatment Plaintiff needed) had been given to Plaintiff prior to the ALJ hearing, and assume that Plaintiff's appointment with Dr. Gonzalez occurred prior to the ALJ hearing. The ALJ could have then inquired regarding the matter at the hearing. The ALJ could have asked the Plan questions about its assertion that the providers treat patients with oral pain medication, and the ALJ could have asked Plaintiff questions about his appointment with Dr. Gonzalez and his contention that Dr. Gonzalez does not in fact provide the treatment Plaintiff needs. Had a hearing occurred, the ALJ could have weighed the evidence, made credibility determinations, and made a finding based on substantial evidence. But that is not what occurred here. Instead, the ALJ's decision (and, in turn, the MAC's decision) regarding the availability of in-network providers who provide the treatment Plaintiff needs is only supported by a single post-hearing submission, which Plaintiff did not have an opportunity to address at any hearing, and which the ALJ did not vet at any hearing. Simply stated, the Secretary's final decision is not supported by substantial evidence, and further proceedings are warranted.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment [DE 35] is **GRANTED**.

2. Defendant's Motion for Summary Judgment [DE 38] is **DENIED**.

3. Plaintiff's Motion for Leave to File a Supplemental Memorandum of Law Regarding Subject-Matter Jurisdiction [DE 52] is **DENIED AS MOOT**.

4. The Court hereby reverses the Secretary's final decision and remands this action to the Secretary, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

5. The Court will enter a separate final judgment.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of September 2026.

**Jared M. Strauss**
**United States Magistrate Judge**